

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 14, 2017.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CARL N. MERKLE, | § | CASE NO. 16-50026-CAG |
| | § | |
| | § | Chapter 11 |
| Debtor. | § | |

### ORDER GRANTING PILGRIM REO, LLC'S MOTION TO DISMISS DEBTOR'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

On June 20 and 21, 2017, came on for hearing Pilgrim REO, LLC ("Pilgrim") and Party-in-Interest Capital Crossing Servicing Company, LLC (Capital Crossing) (also referred to as "Respondents") Motion to Dismiss Debtor's Counterclaims Pursuant to Fed. R. Civ. P. 12 (b)(6) for Failure to State a Claim Upon Which Relief Can be Granted (the "Motion"–ECF No. 164[1]). The Debtor filed a Response on June 21, 2017. (ECF No. 183). The Respondents filed a Reply on June 16, 2017 (ECF No. 202). The Debtor and Pilgrim each appeared through counsel and

---

[1] "ECF" denotes electronic court filing for the Court's electronic docket.

1

presented argument. The Court heard and took the matter under advisement at the conclusion of the hearing. After considering, the arguments made and undisputed evidence as presented, and the file and record in the case, the Court finds that the Motion should be granted.

## JURISDICTION

This Court has jurisdiction over this Motion to Dismiss pursuant to 28 U.S.C. § 1334(b) and the United States District Court for the Western District of Texas' Order of Reference of Bankruptcy Cases and Proceedings dated October 4, 2013. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) (matters affecting the administration of the estate); § 157(b)(2)(B) (allowance or disallowance of claims against the estate); and § 157(b)(2)(C) (counterclaims by the estate against persons filing claims against the estate). Venue in this district is proper 28 U.S.C. §§ 1408 and 1409. The statutory predicate for relief is Fed. R. Civ. P. 12, made applicable to this proceeding through Fed. R. Bankr. P. 7012, and Local Rule 7012. The parties have agreed to invoke the adversary procedures in the resolution of this dispute.

## BACKGROUND

Debtor (Carl N. Merkle) owns and operates an apartment complex known as the Northeast Village Apartments, located at 4535 Schertz Rd., San Antonio, Texas 78233 (the "Property"). *See* Second Amended Claim Objection (as defined below) ¶1.17. On or about July 11, 2005, Debtor entered into a Multifamily Note (the "Note") to purchase the Property and a Multifamily Deed of Trust Assignment of Rents and Security Agreement ("Deed of Trust," and together with the Note, the "Loan Documents"), which secured payment of all sums due under the Note. *See* Second Amended Claim Objection ¶2; true and correct copies of the Note and Deed of Trust are attached to the Affidavit of Kevin Shea ("Shea Affidavit") as Exhibits A-1 and A-2, respectively to Respondents' Motion. The Property is collateral subject to the Deed of Trust. *See* Ex. A-2.

Pilgrim is the current holder of the Loan Documents. Capital Crossing services the Note on behalf of Pilgrim. *See* Second Amended Claim Objection ¶ 37. At various times since 2005, the Debtor has been in default under the terms of the Loan Documents. Specifically, Debtor has, *inter alia*, failed to make monthly installment payments of principal, interest, and escrow in full and on time. *See* Second Amended Claim Objection ¶¶ 12-13.

On or about September 4, 2015, the Respondents sent Debtor a Notice of Default and Notice of Intent to Accelerate ("Notice of Default"), noting Debtor's ongoing payment defaults and invoking the remedy of acceleration under the Loan Documents. *See* Second Amended Claim Objection ¶15;3 a true and correct copy of the Notice of Default is attached to the Shea Affidavit as Exhibit A-3.

On or about October 8, 2015, Debtor had not cured the payment defaults, and Respondents sent Debtor a Notice of Acceleration. *See* Second Amended Claim Objection ¶¶12-16 (admitting that Debtor had not paid the full amounts due for January, 2015 to July, 2015, admitting that Respondents sent the Notice of Default in September 2015, and alleging that Respondents sent the Notice of Acceleration "despite the fact that Debtor had made a full payment for August"); a true and correct copy of the Notice of Acceleration is attached to the Shea Affidavit as Exhibit A-4. Debtor did not pay the full amount owed under the Loan Documents as required by the Notice of Acceleration, and the Second Amended Claim Objection does not contain any factual assertion that Debtor made full payment in compliance with the Notice of Acceleration.

On or about December 15, 2015, Respondents sent Debtor a letter transmitting the Notice of Substitute Trustee's Sale ("Sale Notice"). *See* Second Amended Claim Objection ¶ 17; a true and correct copy of the December 15, 2015, letter including the Sale Notice is attached to the Shea Affidavit as Exhibit A-5.

3

On January 4, 2016 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under title 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) (ECF No. 1). *See* Second Amended Claim Objection ¶ 18. Debtor's Order Confirming First Amended Plan was entered on April 5, 2017 (ECF No. 128).

On April 29, 2016, Pilgrim filed its Proof of Claim No. 6, asserting a secured claim of $877,134.63. *See* Second Amended Claim Objection ¶ 27. On November 4, 2016, Pilgrim filed an Amended Proof of Claim No. 6, asserting a secured claim for $922,675.19. *See* Second Amended Claim Objection ¶ 28. On May 18, 2017, Pilgrim filed a Second Amended Proof of Claim, asserting a secured claim for $964,253.16 and providing additional support for the claim (referred to as "Pilgrim's Claim").

On March 17, 2017, Debtor filed his Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 111). On March 27, 2017, Debtor filed his First Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 119). On May 4, 2017, Debtor filed his Second Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 159) (together with the filings at ECF No. 111 and ECF No. 119, the "Claim Objection"). Pilgrim filed its Motion to Invoke Adversary Procedures and to Enter Scheduling Order on April 19, 2017. (ECF No. 143). The Debtor filed his Response to the Motion to Invoke Adversary Procedures on April 20, 2017. (ECF No. 148). An Agreed Scheduling Order was entered on April 25, 2017. (ECF No. 154). The Debtor filed his Joint Pretrial Order on June 13, 2017. (ECF No. 189).

## MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "need only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***Hershey v. Energy Transfer Partners, LP***, 610 F.3d 239, 245 (5th Cir. 2010) (quoting Fed. R. Civ. P. 8(a)(2)). "'[D]etailed factual allegations' are not required." ***Id.*** (quoting ***Aschcroft v. Iqbal***, 129 S. Ct. 1937, 1949 (2009) (quoting ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007)). A court should not accept, however, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." ***Hershey***, 610 F.3d at 245-46 (quoting ***Iqbal***, 129 S. Ct. at 1949-50). Moreover, the Court "will not strain to find inferences favorable to the plaintiff." ***Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.***, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted). Rather, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" ***Id.*** Determining the existence of facial plausibility is a "context-specific task" that "requires the court to draw on its judicial experience and common sense." ***Iqbal***, 129 S. Ct. at 1950. "A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" ***Harold H. Huggins Realty, Inc. v. FNC, Inc.***, 634 F.3d 787, 796 (5th Cir. 2011) (quoting ***Iqbal***, 129 S. Ct. at 1949 (quoting ***Twombly***, 550 U.S. at 555)). A court should not accept, however, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." ***Hershey***, 610 F.3d at 245-46 (quoting ***Iqbal***, 129 S. Ct. at 1949-50). Moreover, the Court "will not strain to find inferences favorable to the plaintiff." ***Southland***, 365 F.3d at 361 (internal quotations omitted). Rather, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" ***Id.***

Determining the existence of facial plausibility is a "context-specific task" that "requires

the court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. "A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796 (quoting *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570)). An inference of liability must be at least as plausible as any "obvious alternative explanation." *Iqbal*, 129 S. Ct. at 1950-51 (citing *Twombly*, 550 U.S. at 567). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty*, 634 F.3d at 796 (quoting *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted)).

## PARTIES CONTENTIONS

Debtor's counterclaims relate to Debtor's assertion that Respondents have violated the Deed of Trust and applicable Texas law. Debtor asserts that: (1) there has been a breach of the Deed of Trust: (2) that Respondents did not give Debtor proper notice of foreclosure under Tex. Prop. Code Ann. § 51.002; and (3) that the Respondents incorrectly applied the insurance proceeds from a fire damaging several of the apartment units in a manner inconsistent with the Deed of Trust. The parties offer differing views as to how the Court should analyze the Deed of Trust as it relates to the Debtor's counterclaims.[2]

## DISCUSSION

### A. Does Tex. Prop. Code § 51.002(d) apply to the Debtor and the Deed of Trust?

Debtor asserts that Respondents did not follow the notice provisions under section 51 of the Texas Property Code for acceleration and notice of sale under the Deed of Trust. Debtor

---

[2] At the hearing on the Respondents' Motion to Dismiss, Debtor's counsel waived Debtor's counterclaim for "Common Law Unreasonable Debt Collection."

6

contends that he was entitled to at least 20 days' notice, whereas Respondents assert that Debtor was provided more than the 10 days prescribed in the Deed of Trust. Respondents contend that Debtor is not entitled to relief under the Property Code for a breach of the deed of trust because the Property is a commercial building purchased for commercial purposes. As noted below, the notice provisions of § 51.002 of the Property Code only apply to residences. In the Multifamily Note, Debtor "represent[ed]that the indebtedness evidenced by this Note is being incurred by the undersigned solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family, or household purposes." *See* Ex. A-1 at CC_00378. In the Deed of Trust, Debtor represented and agreed that the proceeds of the Note secured by the Deed of Trust were to be "used for business purposes and that the principal obligation secured [thereby] constitute[d] a business loan." *See* Ex. A-2 at ¶ 35.

Debtor argues that the Texas Property Code, chapter 51 is a property statute that applies to any residence. Debtor argues that, the Property Code does not distinguish between a commercial versus a consumer property, but is applicable when a property is a person's residence, which Debtor maintains requires additional protection.

Debtor states that on or about May 16, 2012, Debtor informed William Garlington, a vice president and senior asset manager of Capital Crossing Servicing Company that Debtor had moved into the Property and was using a unit at the Property as his residence (Debtor's Response - Exhibit B). As such, Debtor argues that, because Debtor uses the apartment complex as his residence, Texas Property Code § 51.002(d) requires a 20 day notice by certified mail to a debtor in default on a note involving real property used as a residence. Tex. Prop. Code § 51.002(d) *See* ***Knapik v. BAC Home Loans Servicing***, *LP*, 825 F. Supp. 2d 869, 871 (S.D. Tex. 2011) (finding that § 51.002 applied to only one residence). In ***Knapik***, the debtor used a unit in an apartment complex as a

7

weekend home. The court found that because the apartment was not his primary residence, but only a weekend home, that the debtor would not be entitled to more than one residence for purposes of protection under chapter 51 of the Texas Property Code. In this case, Debtor argues that he has only one residence, a unit of the complex that his unit in the apartment complex qualifies as a residence under the Property Code.

> Texas Property Code § 51.002(b) and (d) states that:
>
> (b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
> (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;
> (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt. ….
>
> (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

Several provisions of The Multifamily Deed of Trust, Assignment of Rents and Security Agreement are relevant to the Court's analysis:

> 7. USE OF PROPERTY. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Instrument was executed. Borrower shall not initiate or acquiesce in a change in the classification of the Property without Lender's prior written consent.
>
> 27. If Lender invokes the power of sale, Lender shall give notice of sale in the manner provided by the laws of TEXAS to Borrower and to such other persons as

8

the laws of TEXAS prescribed, and shall sell the property according to the laws of TEXAS. Lender may sell the Property in one or more parcels and in such order as Lender may determine. Lender may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

29. WAIVER OF HOMESTEAD AND REDEMPTION. Borrower hereby waives all right of homestead exemption in the Property. Borrower hereby waives all right of redemption on behalf of Borrower and on behalf of all other persons acquiring any interest or title in the Property subsequent to the date of this Instrument, except decree or judgment creditors of Borrower's interest or title in the Property subsequent to the date of this Instrument, except decree or judgment creditors of Borrower.

35. The Borrower represents and agrees that the proceeds of the Note secured by this Mortgage will be used for business purposes and that the principal obligation secured hereby constitutes a business loan.

Based on the language of the Deed of Trust and Multifamily Note, Respondents contend that Debtor was not entitled to at least 20 days' notice under § 51.002(d) for a default under a Deed of Trust. It is uncontroverted that Respondents only gave Debtor 10 days' notice. Further, Debtor argues that under paragraph 27 of the Deed of Trust (which incorporates the laws of Texas), that the Deed of Trust includes the requirements of § 51.002(d). Finally, Debtor cites paragraph 7 of the Deed of Trust that states that the Debtor (Borrower) shall not change the classification of the property without the Lender's consent. Debtor asserts that Garlington's knowledge of Merkle's use of a unit of the apartment complex as his residence constitutes acquiescence or consent of Debtor using the property as a residence.

Respondents argue that the Deed of Trust and Multifamily Note prohibit the property for being used for residential purposes. Respondents argue that the original Multifamily Note provided that the loan was for commercial purposes only. Further, paragraph 29 precludes Debtor from using the apartment as a homestead. Finally, paragraph 35 of the Deed of Trust states that the proceeds of the Note will be used for business purposes only and that the loan is a business loan.

9

Not surprisingly, the Court nor the parties were able to find any case law that could guide the Court in interpreting the Note and Deed of Trust under Texas law. Further, as is characteristic of Texas legislative history, there is little legislative history to inform the Court on what the Texas Legislature intended in promulgating the statute.[3] The ***Knapik*** court noted that the legislative history of § 51.002(d) suggests that the Texas Legislature intended § 51.002(d) to apply to current residences, and not prior residences. Beyond this distinction of did § 51.002(d) apply to prior residences, there is not any additional suggestion on what the Texas Legislature intended other than the statute should apply to current residences. As such, the Court must decide how a Texas court might construe the Deed of Trust and Multifamily Note.[4]

The Court recognizes that there is merit in the Debtor and Respondents' positions. The Court finds, however, that the Deed of Trust and Multifamily Note were intended for commercial and business purposes. There is no ambiguity regarding the language of the Note and Deed of Trust regarding the purchase and use of loan for commercial purposes only. Debtor cannot unilaterally change the basis of the loan and assert a personal residence of the property. The fact that Debtor moved onto the property in 2012 (7 years later), and lived there as a tenant, does not change the intended use of the apartment complex into Debtor's residence. Moreover, the fact that the Respondents knew Debtor was living there does not change the basis of the loan. There is no evidence that the Lender gave any written consent for Debtor to claim an apartment as his residence. Debtor has an ownership interest in the property as a commercial building, not a personal residence.

Further, the Court recognizes that Property Code § 51.002(d) uses the term "residence" and

---

[3] Acts 1987, 70th Leg., 2nd C.S., ch. 540, § 1, eff. Jan 1, 1988.
[4] In ***Knapik***, the district court found that, as a court sitting in diversity, that the court would have to construe a statute as a Texas court would. 825 F. Supp. 2d at 871, (citing ***Erie R. v. Tompkins***, 304 U.S. 64 (1938)) (finding that because there is no federal common law, a federal court must apply the substantive law of the state in which an injury occurred).

not "homestead" in Property Code § 51.002(d). As such, Debtor argues that any dwelling used as a residence qualifies for protection under § 51.002(d). The Court finds that such a construction of the statute impermissibly expands the purpose of the statute. In the case at bar, the Court finds that the purpose and intent of the Note and Deed of Trust is commercial use only. As such, the Court finds that because Property Code § 51.002(d) does not apply, the Debtor's claims for relief for breaching the Deed of Trust fail, and must be dismissed with prejudice.[5]

**B. How Should the Court Construe the Deed of Trust for Application of the Insurance Proceeds?**

Debtor raises two arguments regarding Respondents' application of the insurance proceeds received from the insurance carrier to compensate Debtor for fire damage to several units at the apartment complex. First, Debtor argues that under the terms of the Deed of Trust, Respondents were required to apply the insurance proceeds to the Note delinquency. Second, had the insurance proceeds been properly applied to the delinquency, Debtor would have been current under the Note because Debtor contends that Respondents had abandoned the acceleration of the Note by accepting payments under the Note after acceleration.

Debtor directs the Court to provisions of the Deed of Trust:

Paragraph 2 of the Deed of Trust states, in relevant part:

> Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may apply, in any amount and in any order as Lender shall determine in Lender's sole discretion, **any Funds** held by Lender at the time of application (i) to pay rates, rents, taxes, assessments, insurance premiums and Other Impositions which are now or will hereafter become due, or (ii) as a credit against sums secured by this Instrument. Upon payment in full of all sums secured by this Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

---

[5] As a result of the Court's finding that the Note and Deed of Trust control whether the Property is a residence, the Court will not address the question of whether Respondents complied with the Property Code, § 51.002(d). Any claim for violations of § 51.002(d) are dismissed with prejudice.

11

(emphasis added). *See* Debtor's Exhibit A-Deed of Trust.

Debtor then directs the Court to the term "Funds" in Paragraph 2 of the Deed of Trust. Specifically, Paragraph 2 of the Deed of Trust defines "Funds" as:

> Borrower shall pay to Lender on the day monthly installments of principal or interest are payable under the Note (or on another day designated in writing by Lender), until the Note is paid in full, a sum (herein "**Funds**") equal to one-twelfth of (a) the yearly water and sewer rates and taxes and assessments which may be levied on the Property, (b) the yearly ground rents, if any, (c) the yearly premium installments for fire and other hazard insurance, rent loss insurance and such other insurance covering the Property as Lender may require pursuant to paragraph 5 hereof, (d) the yearly premium installments for deed of trust insurance, if any, and (e) if this Instrument is on a leasehold, the yearly fixed rents, if any, under the ground lease, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.

(emphasis added). *See id.*

Debtor then argues that the term "Funds" as defined in Paragraph 2 are similar to and consistent with a requirement that Borrower pay monthly amounts towards escrow. Paragraph 2 allows the Lender to apply Funds "held by lender at the time of application" at Lender's sole discretion. That said, Debtor argues that nowhere in Paragraph 2 is the term "Funds" defined as payments received as a result of insurance claims nor does Paragraph 2 state that insurance proceeds are automatically converted to Funds upon receipt. *See id.* Therefore, Debtor alleges that Paragraph 5 of the Deed of Trust specifically governs the application of insurance proceeds.

Paragraph 5 of the Deed of Trust states, in relevant part:

> Borrower hereby authorizes and empowers Lender… to collect and receive insurance proceeds… Borrower further authorizes Lender, at Lender's option (a) to hold the balance of such proceeds to be used to reimburse Borrower's for the cost of reconstruction or repair of the Property or (b) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof . . . .

Debtor then cites to Paragraph 3 of the Deed of Trust that states in relevant part that payments:

> shall be applied in the following order of priority: (i) amounts payable to Lender by Borrower under paragraph 2 hereof; (ii) interest payable on the Note; (iii) principal of the Note, (iv) interest payable on advances made pursuant to paragraph 8 hereof; (v) principal of advances made pursuant to paragraph 8 hereof; (vi) interest payable on any Future Advance . . . ; (vii) amounts of interest payable on the Future Advances . . . ; and (viii) any other sums secured by this instrument in such order as Lender, at Lender's option may determine

Debtor maintains that the language of Paragraph 3 provides a clear method for application of payments. The first appropriate application of any payment would be to amounts outstanding under Paragraph 2 of the Deed of Trust. Paragraph 3 of the Deed of Trust does not provide that should the insurance proceeds be greater than the amount payable to Lender under Paragraph 2 that Lender can simply treat the surplus proceeds as advanced Funds and apply them at Lender's sole discretion based on Debtor's breach. Rather, Paragraph 3 requires Lender to apply the proceeds according to the order of priority.

Additionally, Paragraph 5 of the Deed of Trust states:

> If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not exceed or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments.

*See id.*

As such, Debtor argues that Respondents applied the balance of the insurance proceeds to the sums secured by the Instrument as allowed under Paragraph 5. Paragraph 5 clearly states that the application of proceeds "shall not exceed or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2." Therefore, Debtor posits that any proceeds in excess of the amounts due to Respondents should be or should have been returned to Debtor. Respondents chose first to accelerate the debt, however, and then to apply the insurance proceeds already in

13

Respondent's possession to the amounts outstanding rather than using the proceeds to cure any default. Debtor argues that this is inconsistent with the Deed of Trust, and, therefore a breach of the Deed of Trust.

Respondents argue that because the Note had been properly accelerated, and the entire principal balance was due, the application of the insurance proceeds could not have cured Debtor's default thereby preventing Pilgrim from going forward with the foreclosure sale. As such, assuming Debtor's argument that the insurance proceeds were improperly applied under the Deed of Trust is correct, the application of the insurance proceeds as Debtor wishes would not have cured the amount due when the Note was accelerated. Thus, Respondents state that Debtor has failed to state a plausible claim for breach of contract based on the application of the insurance proceeds. Respondents received the insurance proceeds in May 2015. *See* Second Amended Claim Objection ¶ 11.8. Debtor admits that at that time, he was in default of the payment terms under the Loan Documents, having made only partial payments from January 2015 to July 2015. *See* Second Amended Claim Objection, ¶ 12. Therefore, under Paragraphs 2 and 5 of the Deed of Trust, the Respondents argue that Respondents had sole discretion to apply the insurance proceeds.[6]

Debtor contends that Respondents either wrongfully accelerated or abandoned the acceleration by acceptance of partial Note payments. Therefore, the application of the insurance proceeds would have cured any default based on the loan no longer being accelerated.

It is a well-established principal in Texas that acceleration can be abandoned by agreement or other action of the parties. ***Khan v. GBAK Props., Inc.***, 371 S.W.3d 347, 353 (Tex. App.—

---

[6] For purposes of the Court's analysis, the Court will assume that Debtor is correct that the Deed of Trust required Respondents to apply the insurance proceeds to the Note delinquency. The Court is making an assumption, and not a finding, as to the Debtor's interpretation of the Deed of Trust.

14

Houston [1st Dist.] 2012, no pet.); ***Holy Cross Church of God in Christ v. Johnny Wolf***, 44 S.W.3d 562, 567 (Tex. 2001) (citing ***San Antonio Real–Estate, Bldg. & Loan Ass'n v. Stewart***, 61 S.W. 386, 388 (1901) (explaining that the parties' agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken")). "Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date." ***Khan***, 371 S.W.3d at 353. There is no requirement in Texas that any agreement to abandon acceleration must be in writing or that it is subject to the Statute of Frauds. ***Id.*** at 356. Rather, because the parties may accomplish abandonment by their actions alone, no agreement in writing is necessary. ***Id.*** (citing ***Stewart***, 61 S.W. at 388); ***Santibanez v. Saxon Mortg. Inc.***, 2012 WL 3639814, at *2-3 (Tex. App.—Eastland Aug. 23, 2012, no pet.). Acceleration, however, may not be abandoned unilaterally where the borrower has detrimentally relied upon the acceleration. ***Swoboda v. Wilshire Credit Corp.***, 975 S.W.2d 770, 776-77 (Tex. App.—Corpus Christi 1998, *reh'g denied, pet. denied*) *disapproved of on other grounds by* ***Holy Cross***; ***Callan v. Deutsche Bank Trust Co. Americas***, 2014 WL 1314831, at *5-6 (S.D. Tex. 2014). Courts have held, however, that abandonment may be demonstrated through the actions of the parties, even without express agreement from the borrower. ***Clawson v. GMAC Mortg., LLC***, 2013 WL 1948128, at *4 (S.D. Tex. May 9, 2013) ("*Stewart* does not preclude a note holder from abandoning acceleration without express agreement from the borrower.") (citing ***Holy Cross***, 44 S.W.3d at 566-67 (noting holder's ability to abandon acceleration by continuing to accept payments without exacting available remedies)).

Debtor argues that a holder can abandon acceleration by continuing to accept payments after exercising the option to accelerate. ***Holy Cross***, 44 S.W.3d at 566–67 (Tex. 2001). The acceleration of a note can be abandoned "by agreement or other action of the parties." ***Boren v.***

*U.S. Nat. Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (quoting, *Khan*, 371 S.W.3d at 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "Abandonment of acceleration has the effect of restoring the contract to its original condition," thereby "restoring the note's original maturity date" for purposes of accrual. *Id.* (quoting, *Khan*, 371 S.W.3d at 353).

Debtor argues that conduct that courts have found sufficient to abandon acceleration is the acceptance of payments, additional Notices to Cure Default and Intent to Accelerate letters, and instituting new application procedures. *Holy Cross*, 44 S.W.3d at 567; *Khan*, 371 S.W.3d at 355; *Clawson v. GMAC Mortgage*, *LLC*, 3:12-CV-00212, 2013 WL 1948128 (S.D. Tex. May 9, 2013); *Meachum v. Bank of New York Mellon Trust, N.A.*, 636 Fed. App'x. 210, 211-212 (5th Cir. 2016). Debtor argues that Respondents' acceptance of payments after October 8, 2015, resulted in Respondents abandoning the acceleration.

Debtor notes that Respondents accepted payments in November and December of 2015, following acceleration of the Note and prior to the application of insurance proceeds. Debtor Exhibit D; E – Payment History. Therefore, Debtor reasons that Respondent's acceptance of those payments was an abandonment of acceleration of Debtor's Note. As such, application of the insurance proceeds would have cured any default prior to acceleration because acceleration had been abandoned.

Respondents respond by noting that Debtor argues that for the first time in Debtor's Response to the Motion to Dismiss that Pilgrim abandoned the acceleration by continuing to accept payments. Respondents maintain that claim has been waived by Debtor's failure to plead it within the time limits set by the Scheduling Order. The Court disagrees, noting that the allegation was raised in the Debtor's Objection and Pre-Trial Order.

Nonetheless, Respondents claim that the Deed of Trust states that accepting less than full

payment does not constitute waiver of any remedy, including the right to accelerate. *See* Ex. A-2 to Motion to Dismiss, Deed of Trust ¶ 13.[7] The "Notice of Acceleration" also stated that any future payments of less than the full amount owed will be applied in accordance with the terms of the Loan documents, without waiver or other impairment of Noteholder's (i) acceleration, (ii) entitlement to the full amount then owed under the Note and Deed of Trust, or (iii) the right to exercise its remedies in the future under the Loan Documents, including foreclosure of its lien under the Deed of Trust; all of which are, and will be, expressly reserved. *See* Ex. A-4 to Motion to Dismiss, p. 3. Thus, Respondents assert that, under the Deed of Trust and the Notice of Acceleration, Pilgrim's acceptance of payments after October 2015 that were less than the full amount owed due under the Note could not be deemed abandonment or waiver of the acceleration.

Respondents argue that Debtor partially paraphrases the opinion in ***Holy Cross Church***, which states that "[e]ven when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments *without exacting any remedies available to it upon declared maturity*." 44 S.W.3d at 566–67 (citations omitted) (emphasis added). Respondents' reading of ***Holy Cross Church*** is correct. Here, even though Pilgrim continued to accept payments (which did not constitute abandonment or waiver under the express terms of the Deed of Trust and Notice of Acceleration), it did not forego any remedies available to it, but rather, posted the Property for foreclosure sale. Moreover, in its analysis the ***Holy Cross Church*** court expressly states "abandonment is not implicated in this case" because the record showed that the

---

[7] 13. FORBEARANCE BY LENDER NOT A WAIVER. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

church (Holy Cross) had not made any payments to the lender after acceleration. *Id.* at 570. Thus, the Court agrees that **Holy Cross Church** case is inapplicable to the case at bar.

Respondents argue that the other cases Debtor cites are similarly unpersuasive. In **Boren**, the Respondents note that the court held that "[a] lender waives its earlier acceleration when it puts the debtor on notice of its abandonment ... *by requesting payment on less than the full amount of the loan.*" **Boren v. U.S. Nat. Bank Ass'n**, 807 F.3d at 106 (lender argued that it abandoned acceleration of the note, thereby tolling limitations, by sending a new notice of default allowing borrowers to cure by bringing monthly payments current). In **Meachum**, 636 Fed. Appx. at 213, the lender, after accelerating the note, sent a letter "request[ing] payment on less than the full amount of the loan" which the court found to constitute abandonment for purposes of calculating the statute of limitations. Debtor has never pled that Pilgrim requested payment of less than the full amount owed under the Note after acceleration, only that it accepted payments, which the Deed of Trust and the Notice of Acceleration expressly state is not a waiver or abandonment.

Additionally, by December 2015, Respondents argue that Debtor was also in default under the Loan Documents because he had granted a subordinate lien on the Property in favor of his ex-wife despite failing to obtain Pilgrim's consent and because he had not repaired the fire damage to units 201 and 204 promptly. The application of the proceeds in the manner preferred or advocated by Debtor could not have cured those defaults. The Court agrees. As such, the Court finds that the even assuming that Debtor's interpretation of the Deed of Trust required Respondents to apply the insurance proceeds to the Debtor's delinquency on the Note, the application of the insurance proceeds would not have cured the balance due under the Note because the entire indebtedness was due because the Note had been accelerated. Further, Debtor had improperly encumbered the property with a second lien to his ex-wife that Respondents had not consented.

For the reasons stated herein, it is ORDERED, that Respondent's Motion to Dismiss is GRANTED, and Debtor's Counterclaims are DISMISSED WITH PREJUDICE.

# # #