

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 15, 2017.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CARL N. MERKLE, | § | CASE NO. 16-50026-CAG |
| | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**ORDER GRANTING IN PART, DENYING IN PART PILGRIM REO, LLC AND CAPITAL CROSSING SERVICING COMPANY, LLC MOTION FOR APPROVAL OF DEFAULT INTEREST, COSTS, EXPENSES AND ATTORNEYS' FEES UNDER 11 U.S.C. § 506(b) (ECF. NO. 203)**

On June 20 and 21, 2017, came on for hearing Pilgrim REO, LLC ("Pilgrim") and Party-in-Interest Capital Crossing Servicing Company, LLC (Capital Crossing) (also referred to as "Respondents") Motion for Approval of Default Interest, Costs, Expenses, and Attorneys' Fees Under 11 U.S.C. 506(b) (the "Motion"— ECF No. 203).[1] Debtor filed an Objection and Response on June 19, 2017 (the "Objection") (ECF No. 210). Respondents filed their Reply on July 19, 2017

---

[1] "ECF" denotes electronic court filing for the Court's electronic docket. This Motion was consolidated and heard with the Debtor's Second Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 Filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 159).

(ECF No. 215). Debtor and Pilgrim each appeared through counsel and presented argument. The Court heard and took the matter under advisement at the conclusion of the hearing.[2] After considering the arguments made and evidence presented, and the file and record in the case, the Court finds that the Motion allowing Respondents attorneys' fees is granted in part, and, denied in part.

## JURISDICTION

The Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b). This matter is referred to this Court under the United States District Court for the Western District of Texas' Order of Reference of Bankruptcy Cases and Proceedings dated October 4, 2013. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) (matters affecting the administration of the estate) and § 157(b)(2)(B) (allowance or disallowance of claims against the estate). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. The parties have agreed to invoke the adversary procedures in the resolution of this dispute.

## PROCEDURAL HISTORY

Debtor filed his Debtor's Second Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 Filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC on May 4, 2017 (ECF No. 159). Respondents filed their Response on May 18, 2017. The Court denied in part, and granted in part, Debtor's Second Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 Filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 224). Respondents also filed their Motion to Dismiss Debtor's Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) on May 18, 2017

---

[2] After the hearing, the Court allowed further briefing on the Motion and submission of further documentary evidence on the issue of attorney's fees and costs. *See* ECF Nos. 213, 216, 217, and 219. The Court has considered the additional briefing and evidence in this Order.

(ECF No. 164). Debtor filed his Response to the Motion to Dismiss on June 12, 2017 (ECF. No. 183). Respondents then filed a Reply in support of their Motion to Dismiss on June 16, 2017 (ECF No. 202). On July 14, 2017, the Court granted Pilgrim and Capital Crossing's Motion to Dismiss and dismissed with prejudice the Debtor's counterclaims (ECF No. 214).

Pilgrim and Capital Crossing filed their Motion for Approval of Default Interest, Costs, Expenses, and Attorney's Fees Under 11 U.S.C. § 506(b) of the Bankruptcy Code (ECF No. 203). Debtor filed his Objection and Response on June 19, 2017 (ECF No. 210). The parties provided further briefing on the issues contained in the Motion and Response. The Court will address the allowance of Respondents attorneys' fees in this Order.

## BACKGROUND

Debtor (Carl N. Merkle) owns and operates an apartment complex known as the Northeast Village Apartments, located at 4535 Schertz Rd., San Antonio, Texas 78233 (the "Property"). *See* Second Amended Claim Objection ¶1.17. On or about July 11, 2005, Debtor entered into a Multifamily Note (the "Note") to purchase the Property and a Multifamily Deed of Trust Assignment of Rents and Security Agreement ("Deed of Trust," and together with the Note, the "Loan Documents"), which secured payment of all sums due under the Note. *See* Second Amended Claim Objection ¶2; Respondents' ("R") Exhibits 34 and 35. The Property is collateral subject to the Deed of Trust. (R-35).

Pilgrim is the current holder of the Loan Documents. Capital Crossing services the Note on behalf of Pilgrim. Motion ¶ 7. At various times since 2005, the Debtor has been in default under the terms of the Loan Documents. Specifically, Debtor has, *inter alia*, failed to make monthly installment payments of principal, interest, and escrow in full and on time. *See* Second Amended Claim Objection ¶¶ 12-13.

On or about September 4, 2015, the Respondents sent Debtor a Notice of Default and Notice of Intent to Accelerate ("Notice of Default"), noting Debtor's ongoing payment defaults and invoking the remedy of acceleration under the Loan Documents. *See* Second Amended Claim Objection ¶15; (R-53).

On or about October 8, 2015, Debtor had not cured the payment defaults, and Respondents sent Debtor a Notice of Acceleration. *See* Second Amended Claim Objection ¶¶12-16 (admitting that Debtor had not paid the full amounts due for January, 2015 to July, 2015; admitting that Respondents sent the Notice of Default in September 2015; and alleging that Respondents sent the Notice of Acceleration "despite the fact that Debtor had made a full payment for August") (R-54). Debtor did not pay the full amount owed under the Loan Documents as required by the Notice of Acceleration, and the Second Amended Claim Objection does not contain any factual assertion that Debtor made full payment in compliance with the Notice of Acceleration. On or about December 15, 2015, Respondents sent Debtor a letter transmitting the Notice of Substitute Trustee's Sale ("Sale Notice"). *See* Second Amended Claim Objection ¶ 17; (R-55).

On January 4, 2016 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under title 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) (ECF no. 1) (R-1). Debtor proposed a First Amended Plan of Reorganization and Debtor's Order Confirming First Amended Plan was entered on April 5, 2017 (ECF No. 128) (R-26).

On April 29, 2016, Pilgrim filed its Proof of Claim No. 6, asserting a secured claim of $877,134.63 (R-7). On November 4, 2016, Pilgrim filed an Amended Proof of Claim No. 6, asserting a secured claim for $922,675.19 (R-8). On May 18, 2017, Pilgrim filed a Second Amended Proof of Claim, asserting a secured claim for $964,253.16 and providing additional support for the claim. (Referred to as "Pilgrim's Claim") (R-9).

4

On March 17, 2017, Debtor filed his Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 111); (R-21). On March 27, 2017, Debtor filed his First Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 119); (R-24). On May 4, 2017, Debtor filed his Second Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC (ECF No. 159); (R-28) (together with the filings at ECF No. 111 and ECF No. 119, the "Claim Objection"). Pilgrim filed its Motion to Invoke Adversary Procedures and to Enter Scheduling Order on April 19, 2017 (ECF No. 143); (R-27). Debtor filed his Response to the Motion to Invoke Adversary Procedures on April 20, 2017 (ECF No. 148). An Agreed Scheduling Order was entered on April 25, 2017 (ECF No. 154). Debtor filed his Joint Pretrial Order on June 13, 2017 (ECF No. 189).

## PARTIES' CONTENTIONS

Respondents argue that as an oversecured creditor, § 506(b) entitles them to collect post-petition interest, attorneys' fees, and costs. Motion ¶¶ 16-19. Second, under the Loan Documents, Respondents maintain that they have a contractual basis to collect default interest, attorneys' fees and, expenses. Motion ¶ 20. The Note provides that "in the event of any default in the payment of this Note, and if the same is referred to an attorney at law for collection or any action at law or in equity is brought with respect hereto, the undersigned shall pay the holder hereof all expenses and costs, including, but not limited to, attorney's fees." Motion, Exhibit A, p. 2.

Similarly, the Deed of Trust states that "[a]ny attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy . . . shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof." Motion, Exhibit B, ¶ 18.

5

The Deed of Trust further states that in the event of default, if the noteholder elects to invoke its remedies under the Loan Documents, including acceleration and foreclosure, the noteholder "shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including, but not limited to, attorney's fees, costs of documentary evidence, abstracts and title reports." Motion Exhibit B, ¶ 27.

Respondents argue that the attorneys' fees and expenses that Pilgrim has incurred, and continues to incur, were reasonable and necessary, as set forth in the affidavits of Bradley Gordon and David Gragg and as demonstrated by the invoices attached thereto. Pilgrim has incurred post-petition legal fees in excess of $65,000, not including fees for attending and representing Respondents at the June 20-21, 2017, hearings and post-trial briefing.[3] Respondents attach to their Motion as Exhibit C the Affidavit of Bradley Gordon and the invoices for fees incurred by Reese Gordon Marketos LLP (RGM) and Winstead PC through March 31, 2017. Attached to the Motion as Exhibit D are the Affidavit of David S. Gragg and invoices detailing the fees and expenses incurred by Langley & Banack, Inc. ("L&B") through April 30, 2017. Both RGM and L&B have continued to accrue fees related to Pilgrim's efforts to collect the amounts due under the Loan Documents.

Debtor contends that there are three ways that a creditor may seek attorneys' fees: (1) an objection to proof of claim; (2) the filing of a fee application that would be examined under 11 U.S.C. § 330; or (3) a motion to allow fees and expenses under § 506(b). Objection ¶¶ 6-16. Debtor

---

[3] In their Supplement to Motion for Approval of Default Interest, Costs, Expenses, and Attorneys' Fees Under 11 U.S.C. 506(b) (ECF No. 216), Respondents attach their attorneys' fees for June 2017 in the amount of $60,780.50 less a professional discount of $12,533.30, for a balance due of $48,247.20. Respondents also request reimbursement for expenses for $4,210.03. Those expenses include meals, parking, teleconferencing, parking, copying, and digital imaging. Respondents also include an estimated bill for July 2017 that includes attorneys' fees of $2,947.50 and similar expenses of $614.61. This does not include Ms. Wilson's time for fees of $3,562.11 or estimated time and expenses for the remainder of July for $8,500.00.

argues that the Respondents' Motion is untimely and should be denied. Objection ¶ 18. Further, Debtor argues that Respondents are not entitled to pre-petition and post-confirmation attorneys' fees under § 506(b). Debtor argues that attorneys' fees must be necessary and reasonable, and, Respondents have not met their burden in demonstrating that their fees and costs are reasonable and necessary. Objection ¶¶ 22-26. Debtor additionally argues that Respondents' proofs of claim fail to comply with the requirements of Fed. R. Bankr. P. 3001(a) because of insufficient supporting documentation. ¶¶ 15-17. Debtor states in his Brief in Support of Denying Creditor's Pre-Petition Attorneys' Fees (ECF No. 219) that Respondents' attorneys' fees and costs for conducting a non-judicial foreclosure are excessive and unnecessary. ¶¶ 7-12. Debtor also objects to the fees for Winstead P.C., former counsel to Respondents, because there is no supporting affidavit from Winstead in support of its fees. *Id*. at ¶ 13.

## DISCUSSION

As an initial matter, the Court has already determined that Respondents' notice of default was proper under the Deed of Trust. *See* (ECF No. 214, pp. 8-10) (Order Denying Debtor's Counterclaims). As such, the debt was properly accelerated and Debtor owed the entire balance due when the property was posted for foreclosure. The Court found that Respondents did not waive their rights under the Loan Documents to require the full amount of the debt paid. *Id*. at pp. 14-18. Debtor asserts that had Respondents applied the insurance proceeds to the past due balance, Debtor would have been current on the Note. This assertion is incorrect. The Court found that because the Note was properly accelerated, the application of the insurance proceeds to the delinquency under the Note would not have cured the balance due under the Note. *Id*. As such, Debtor's assertions that attorneys' fees were unnecessary as it relates to foreclosure of the Property is incorrect.

Debtor further argues that the Court should examine attorneys' fees for foreclosure services

under the Fifth Circuit's decision in *In re 804 Congress, L.L.C.*, 756 F.3d 368 (5th Cir. 2014). In *804 Congress, L.L.C.*, the Fifth Circuit found that a bankruptcy court retains jurisdiction to determine the reasonableness of an oversecured creditor's attorneys' fees and costs after the lifting of the automatic stay and foreclosure of its collateral pursuant to § 506(b). *Id*. at 373-75. One of the issues in *In re 804 Congress, L.L.C.*, was whether a five percent commission of the bid for conducting a non-judicial foreclosure was the appropriate amount of fees under § 506(b). *Id*. at 372. The property sold for $4.355 million, and, under the deed of trust, the substitute trustee received a five percent commission of the bid that equaled $217,750.00. *Id*. The substitute trustee testified that she spent approximately 20 hours of time at a rate of $375/hour preparing for and conducting the non-judicial foreclosure. *Id*. The bankruptcy court found that, notwithstanding what the deed of trust provided, that under § 506(b) the court could determine the reasonable amount of fees and expenses. *Id*. The bankruptcy court concluded that the reasonable amount of fees for conducting a non-judicial foreclosure was the time expended (20 hours) by the hourly rate ($375/hour) for a total of $7,500.00. *Id*.

> The Fifth Circuit agreed with the bankruptcy court, finding that:
>
> Based on the text of § 506(b), both the Deed of Trust trustee's fee sought by Goldsby and the attorneys' fees sought by Wells Fargo must be reasonable. It is not dispositive that under Texas law, a trustee's contractual fee of five percent of the indebtedness would generally be enforceable. We held in *Hudson Shipbuilders* that a bankruptcy court has the power to arrive at a reasonable attorneys' fee even "if the contractual attorneys' fee provision is valid under state law." We agree with the Eleventh Circuit that "the language of 506(b) [does not] indicate that just because a given fee arrangement is enforceable under state law, it should be exempt from the reasonableness standard.
>
> *Id.* at 376. (footnotes omitted).

The Court agrees with Debtor that it should examine the reasonableness of Respondents' attorneys' fees under § 506(b), but there are two important distinctions in *In 804 Congress* that

are not present in the case at bar. First, the issue regarding foreclosure fees was a function of a substitute trustee's commission, not attorneys' fees. Second, the oversecured creditor in *In re 804 Congress* did not submit a proper application for fees nor did it provide testimony or documentation that the fees were reasonable. *Id*. at 372. Accordingly, the bankruptcy court denied the allowance of attorneys' fees due to lack of proof. *Id*. In the case at bar, Respondents' have provided supporting documentation and an affidavit in support of their fees.

Debtor also argues that Respondents are not entitled to recover their pre-petition and post-confirmation attorneys' fees under § 506(b). The Fifth Circuit held in *In re 804 Congress, L.L.C.* that the allowance of attorneys' fees for both pre- and post-petition services is permissible under § 506(b). *Id*. at 373-75. The Fifth Circuit ruled that the allowance of attorneys' fees and costs is determined under federal law, not state law or by contractual agreement. *Id*. As such, Debtor's contention that this Court cannot consider pre- and post-petition attorneys' fees and expenses is contrary to the Fifth Circuit's holding in *In re 804 Congress* is incorrect.

Debtor argues that the Respondents' Motion is late and does not comply with Fed. R. Bankr. P. 3001(a). The Order Confirming Debtor's First Amended Plan of Reorganization specifically states that:

> The Pilgrim claim is disputed and Debtor shall file a claim objection and any related claims in accordance with an agreed scheduling order.
> …
> **Nothing herein or in the confirmed plan shall be construed to waive any claims or rights related to the Disputes by Debtor, Pilgrim REO or Capital Crossing.**

Order Confirming First Amended Plan at p. 2. (R-26).

The Court finds that, by agreement that the Respondents and Debtor agreed to adjudicate the Respondents' proof of claim and related fees and expenses in the context of a claims objection. Further, the Court suggested that Respondents file a motion under § 506(b) to determine the

Respondents' attorneys' fees and expenses. *See* **In re Shree Mahalaxmi, Inc.**, 522 B.R. 899, 906 (Bankr. W.D. Tex. 2014) (recognizing that a § 506(b) motion is an appropriate pleading to determine an oversecured creditor's attorneys' fees and expenses). As such, the Court finds that the Respondents' proof of claim and supporting documentation are not late given the parties' agreement.[4] Further, the Court finds that Debtor's argument that Respondents' proof of claim fails to comply with Rule 3001 due to lack of documentation baseless because the Court allowed, and the parties agreed to file post-hearing briefs and evidence concerning fees.[5]

Respondents' Second Amended Proof of Claim, dated May 18, 2017, (R-9) has the following components:

(1) accrued interest of $65,226.46 (including application of adequate protection payments);

(2) late fees of $3,517.11;

(3) legal expenses of $98,236.76; and

(4) environmental fees of $2,000.00 and valuation fees of $4,745.00.[6]

Respondents calculate their proof of claim to be $964,253.16 as of May 31, 2017, with a per diem of $142.73. Respondents' proof of claim includes a copy of the Multifamily Note and Deed of Trust, plus a one-page breakdown of the charges and fees. Under the Bankruptcy Code, oversecured creditors may collect certain sums incurred post-petition:

---

[4] Debtor also argues that the Respondents' Motion for Approval of Fees is untimely because it was filed after the Debtor's Plan of Reorganization was confirmed. The Court noted at the hearing on June 20, 2017, that the Motion was filed as a prophylactic measure in response to the Debtor's argument that the post-petition interest and fees could not be requested through Pilgrim's Proof of Claim and approved through the pending claim objection procedure. The Court agrees with the Respondents that the Motion was timely. In addition, the Court granted the parties additional time after the June 20-21 hearings to file post-hearings briefs and evidence in support of or opposition to the Motion. The Court finds that the Debtor has not been prejudiced by Respondents' Motion being heard at the same time as the claims objection hearing.

[5] Fed. R. Bankr. P. 7054(b) permits a bankruptcy court to establish local rules to resolve fee related issues without conducting extensive evidentiary hearings. Local Rule 7054(a)(1) requires attorney fees awards to be made by motion unless an exception applies, which none applies to this matter.

[6] The Court by separate Order has ruled on the allowance of accrued interest, late fees, and environmental and valuation fees. (ECF No. 224).

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.
>
> 11 U.S.C. § 506(b).
>
> There are:
>
> four basic requirements for allowance of fees, costs or charges to a secured creditor: (1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees [costs or charges] must be provided for under some agreement or state statute; and (4) the fees [costs or charges] sought must be reasonable.

*In re Shree Mahalaxmi, Inc.*, 522 B.R. at 906 (citation and internal quotation marks omitted) (brackets in original). The Court finds that all four requirements are met in this case. To begin with, the Respondents have a secured claim and there is no dispute that they are oversecured. Debtor did not object to the validity of Respondents' lien or that Respondents are oversecured.

The Note provides that "in the event of any default in the payment of this Note, and if the same is referred to an attorney at law for collection or any action at law or in equity is brought with respect hereto, the undersigned shall pay the holder hereof all expenses and costs, including, but not limited to, attorney's fees." (R-34, p. 2). Similarly, the Deed of Trust "[a]ny attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy . . . shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof." (R-35 ¶ 18). The Deed of Trust further states that in the event of default, if the noteholder elects to invoke its remedies under the Loan Documents, including acceleration and foreclosure, the noteholder "shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including, but not limited to, attorney's fees, costs of documentary evidence, abstracts and title reports."(R-35, ¶ 27). As such, by agreement, Respondents are entitled to their reasonable

11

attorneys' fees and costs.

Pilgrim states that it has incurred post-petition legal fees in excess of $65,000, with the accrual of more fees and expenses after the June 20th hearing on the Claim Objection. Attached to Respondents' Motion as Exhibit C is the Affidavit of Bradley Gordon and the invoices for fees incurred by RGM and Winstead PC through March 31, 2017. Attached to Respondents' Motion as Exhibit D are the Affidavit of David S. Gragg and invoices detailing the fees and expenses incurred by L&B through April 30, 2017. Both RGM and L&B have continued to accrue fees related to Pilgrim's efforts to collect the amounts due under the Loan Documents.

The Court finds that Debtor's objections do not relate to the competency or hourly billing rate of Respondents' attorneys. This Court noted in *In re Temple Retirement Community* that "[t]he community whose standard is applied to attorneys' fees in most civil litigation is normally presumed to be the local community in which services are rendered." 97 B.R. 333, 342 (Bankr. W.D. Tex.1989) (citations omitted). Additionally, "[m]any bankruptcy cases are often more regional or even national than they are local in scope, so that looking solely to the local community's range of rates would impose an unnecessarily parochial cap on the case." *Id.* The Court has reviewed the fee invoices of RGM (Exhibit C to the Motion) and notes that Brad Gordon's rate is $425/hour. Winstead attorney Jeff Livingston and paralegal Sherry Baldwin charged $415/hour and $235/hour respectively. The invoices for L&B (Exhibit D to the Motion) indicate that David Gragg charged $475/hour and Natalie Wilson charged $260/hour. Based on the Court's experience, the hourly rates for all attorneys and paralegals comports with local rates and standards for billing.[7]

---

[7] Debtor did not object to the allowance of any expenses in connection with Respondents' attorneys' fees. As such, the expenses are allowed.

12

As such, following Fifth Circuit precedent, this Court held *In re Shree Mahalaxmi, Inc.*:

> The reasonableness of post-petition attorneys' fees are tested under federal law. In the Fifth Circuit, a three-step approach is used to determine the reasonableness of attorneys' fees for over-secured creditors: (1) determine the nature and extent of the services supplied by the attorney with reference to the time and labor records submitted; (2) ascertain the value of the services; and (3) briefly explain the findings and the reasons upon which the award is based. Additionally, a court reviewing the reasonableness of a secured creditor's fees should consider the twelve *Johnson* factors, the circumstances surrounding the case, the manner of its administration, and whether duplication of services occurred. [8]

522 B.R. at 907 (internal citations and quotation marks omitted).

The Respondents argue that the following *Johnson* factors weigh in favor of allowing Respondents' post-petition attorneys' fees:

a. Time and Labor Required. Respondents note that this case took place over a period of approximately 18 months. Additionally, as has been stipulated, Debtor was in default for periods pre-petition. During the course of the bankruptcy, Debtor proceeded in a number of different directions. Throughout this process, Debtor and Respondents engaged in significant settlement discussions, including formal mediation. This process increased the costs incurred by Respondents. As shown by the invoices submitted with the Motion for Approval (including the Supplement) and at the trial on the Claim Objection, Respondents did not incur significant expenses until it became clear that the parties would need to litigate Pilgrim's Claim. Counsel for Pilgrim discounted its bills on a frequent basis. In addition, once it became clear that litigation was unavoidable, counsel for Pilgrim transferred primary responsibility of the handling of this matter

---

[8] The *Johnson* factors include the following: (1) time and labor required; (2) novelty and difficulty of the legal questions; (3) skill required to properly perform the legal services; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

to Natalie F. Wilson who is a junior member of the Firm, while maintaining the proper level of experience at a lower hourly rate. Similarly, Reese Gordon Marketos was not heavily involved in this matter until litigation appeared unavoidable, and provided valuable institutional knowledge.

b. Requisite Skill. Counsel for Pilgrim discounted its bills on a frequent basis. In addition, once it became clear that litigation was unavoidable, counsel for Pilgrim transferred primary responsibility of the handling of this matter to Natalie F. Wilson who is a junior member of the Firm, while maintaining the proper level of experience at a lower hourly rate. Similarly, Reese Gordon Marketos was not heavily involved in this matter until litigation appeared unavoidable, and provided valuable institutional knowledge of the relationship between the Parties and Pilgrim's claim, as well as topical expertise of the underlying documents and applicable Texas law.

c. Preclusion of Other Employment. Natalie Wilson worked almost full-time on this matter in May and June 2017. Natalie Wilson and David Gragg both devoted significant time to this matter in March and April 2017, as well.

d. Customary Fee. The hourly rates charged by Wilson and Gragg are customary for this District based on their experience and expertise, and this Court has previously approved these hourly rates in a number of cases. Other members of the Firm were consulted or utilized on an as-needed basis, and their rates are likewise commensurate with their experience, expertise, and the scope of work that they were asked to perform. Gordon's hourly rate is likewise commensurate with his experience and expertise; it is comparable to rates charged in this District by similarly situated attorneys.

e. Time Limitations. The Claim Objection was set by agreement on an expedited basis, requiring significant amounts of work in an approximately eight-week period.

<u>f. Amount involved and results obtained.</u> Pilgrim's Claim in nearly $1 million. The amounts incurred are reasonable in light of the size of the Claim. Additionally, Pilgrim has been successful at all stages of this bankruptcy case.

Additionally, Respondents point to the following pleadings/hearings that their attorneys filed and made appearances as an indication of the scope of their work, the hours expended, and the basis for their fees (this recitation does not include the matters discussed in the "Procedural Background" in this Order):

On August 3, 2016, Pilgrim filed its Motion for Relief from the Automatic Stay ("Motion to Lift Stay") (ECF No. 37). After a number of voluntary continuances, the Motion to Lift Stay was ultimately set for hearing on March 28, 2017, in conjunction with the hearing on confirmation of the Debtor's plan of reorganization.

On September 2, 2016, Debtor filed his Debtor Plan of Reorganization ("Plan") (ECF No 50) and Debtor's Disclosure Statement to Plan of Reorganization ("Disclosure Statement") (ECF No. 51). The hearing on the Disclosure Statement was set for October 17, 2016.

On October 11, 2016, Pilgrim filed its Objection to Debtor's Disclosure Statement (ECF No. 57).

On October 17, 2016, the hearing on the Disclosure Statement was re-set for October 31, 2016.

On October 27, 2016, Debtor filed his Motion to Convert Case from Chapter 11 to Chapter 13 (ECF No. 59) ("Motion to Convert"). The hearing on the Motion to Convert was set on an expedited basis for October 31, 2016 and then re-set in open Court for November 10, 2016.

On October 31, 2016, upon Debtor's Motion, the Disclosure Statement Hearing was continued to November 10, 2016. *See* Order on Motion for Continuance for Hearings on (1) Disclosure Statement; and (2) Motion for Relief from the Automatic Stay (ECF No. 66).

On October 31, 2016, upon Debtor's Motion, the Disclosure Statement Hearing was continued to November 10, 2016. *See* Order on Motion for Continuance for Hearings on (1) Disclosure Statement; and (2) Motion for Relief from the Automatic Stay (ECF No. 66).

On November 4, 2016, the Respondents filed their Response and Objection to Debtor's Motion to Convert Case from Chapter 11 to Chapter 13 (ECF No. 69).

On November 10, 2016, the Disclosure Statement hearing was again re-set for December 14, 2016.

The hearing on the Motion to Convert was again re-set for February 6, 2017 and then for February 24, 2017.

On February 21, 2017, Debtor filed his Debtor's Notice of Withdrawal of his Motion to Convert Case from Chapter 11 to Chapter 13 (ECF No. 92).

On February 24, Debtor filed his First Amended Debtor Plan of Reorganization (ECF No. 93) and Debtor's Disclosure Statement to Plan of Reorganization (ECF No. 94). The confirmation hearing was set for March 28, 2017.

On March 9, 2017, Debtor filed Debtor's Application to Employ ACR Mutlifamily as Commercial Realtor (ECF No. 105). The hearing on that Application was set for March 20, 2017 and was approved at that time. *(ECF No.* 112).

On March 17, 2017, Debtor filed his Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC. (ECF No. 111) (as subsequently amended, the "Claim Objection").

On March 21, 2017, Pilgrim filed Pilgrim REO, LLC's Objection to Debtor's First Amended Disclosure Statement and First Amended Plan of Reorganization (ECF No. 113).

On March 27, 2017, Debtor filed his First Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company*, LLC* (ECF No. 119).

At the March 28, 2017 hearing on Plan confirmation, Debtor and Respondents reached an agreement that resolved Respondents' objections to the Plan. As part of that agreement, among other things, the parties agreed that the Claim Objection would be heard on June 8, 2017 and that the parties would invoke the Adversary Procedures, but Debtor would not file an adversary proceeding to assert the counterclaims contained within the Claim Objection. The Court approved the proposed Plan as modified by the agreement of the parties and the Confirmation Order was entered on April 5, 2017.

On March 29, 2017, the Court entered its Order Mooting Pilgrim's Motion to Lift Stay (ECF No. 123).

On April 5, 2017, the Court entered the Order Confirming Debtor's First Amended Plan of Reorganization (ECF No. 128).

Debtor argues generally that the Respondents are not entitled to recover the attorneys' fees requested because they were not reasonable or necessary. Debtor does not point to specific examples of overbilling other than to suggest that counsels' fees should be similar to the commission awarded the substitute trustee in ***In re 804 Congress, L.L.C***. This case and ***In re 804 Congress, L.L.C.*** are factually and legally distinct. As detailed herein, this case involved a multitude of contested hearings and pleadings being filed. There was no foreclosure and the record

16

is clear regarding the extensive pre-bankruptcy dealings of the parties. Debtor has not cited specific examples where pre-petition work was not performed or that the amount of time was extensive. The amount claimed for pre-petition fees is approximately $12,000 less than what is reflected on the invoices. This difference is more than adequate to ensure that Debtor is not paying for work performed in connection with transfers that were unrelated to collection, and is a significant discount to the fees actually incurred. Additionally, the earliest pre-petition invoices are from 2014, so the amounts claimed do not reflect any work performed in connection with unilateral transfers that were not related to collection. The uncontroverted testimony at trial was that the 2015 transfer from Pilgrim Trust to Pilgrim REO was related to collection, therefore, the attorneys' fees incurred in connection with that transfer are recoverable under the terms of the Loan Documents. Thus, the pre-petition fees requested in Claim No. 6 (as amended), and as substantiated at trial, should be allowed. As such, as to the issue of the reasonableness of the pre-petition fees, Debtor's objection fails.[9]

Additionally, the same analysis applies to Debtor's arguments regarding the allowance of post-petition fees. This case involved a mediation, numerous motions and settings for matters that pre-dated the confirmation hearing, a contested disclosure statement and plan confirmation hearing, and matters concerning the Debtor's proof of claim objections. The Court cannot discern that the work performed or the amount billed was unnecessary or unreasonable.

Debtor objected to the admission of Exhibit R-80, the affidavit of Bradley Gordon, to the extent that it offered an opinion on the reasonableness of the fees incurred by Winstead PC. The

---

[9] *Cf.* ***In re Palmaz Scientific Inc.***, 556 B.R. 770, 776-79 (Bankr. W.D. Texas 2016) where the parties objecting to fees provided detailed objections regarding the unreasonableness of the hours billed per task; the unreasonableness of unnecessary work; and that the billing of partner time for tasks that could have been performed by associates.

Court sustained Debtor's objection to the admission of Gordon's affidavit regarding Winstead PC attorneys' fees (R-21). As such, the Court cannot rely upon Gordon's affidavit in support of Winstead's fees. Further, Gordon was not qualified as an expert, so he cannot give an expert opinion in this matter. Respondents submit that the Court can evaluate the Winstead PC invoices (which were admitted without objection) independently and that no witness testimony regarding their reasonableness and necessity is required. The Court finds that Gordon's affidavit is admissible to the extent that it relates to the fees and expenses incurred by Reese Gordon Marketos, LLP (R-20). The Court finds that these fees are allowed.

This Court found in *In re Shree Mahalaxmi, Inc.* that the Fifth Circuit requires an over-secured creditor to provide evidence regarding the nature and extent of the services supplied by the attorney with reference to the time and labor records submitted, and whether the fee request meets the twelve *Johnson* factors, the circumstances surrounding the case, the manner of its administration, and whether duplication of services occurred. 522 B.R. at 906-07. Other than the invoices themselves, there is no supporting affidavit regarding the nature and extent of the services provided nor is there any statement regarding how the attorneys' fees meet the *Johnson* factors. As such, the Winstead fees are disallowed because the requested fees do not meet the standard under *Johnson*.

Debtor has also claimed his attorneys' fees as damages. The Court finds that, as a matter of law, Debtor is not entitled to recover any attorneys' fees against the Respondents. Debtor sought to recover his attorneys' fees incurred in connection with the bankruptcy case. The only statutory basis for recovery that Debtor has articulated is Chapter 38 of the Texas Civil Practice and Remedies Code. Section 38.001(8) of the Texas Civil Practice and Remedies Code provides for the recovery of attorneys' fees incurred in relation to a claim on a written contract. Debtor alleged

two counterclaims for breach of contract, based on alleged improper notice of foreclosure and misapplication of insurance proceeds, respectively. Both counterclaims were dismissed with prejudice (as was Debtor's third counter-claim for common law unreasonable debt collection, which does not fall under any of the categories covered by section 38.001 of the Texas Civil Practice and Remedies Code) (ECF No. 214). Because Debtor was unsuccessful on his breach of contract claims, he is not entitled to recover any attorneys' fees under § 38.001(8) of the Texas Civil Practice and Remedies Code.

Debtor has not asserted any other statutory basis for awarding him his attorneys' fees. Further, nothing in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Rules provides that a Debtor who objects to a creditor's claim may recover attorneys' fees. *See*, *e.g.*, 11 U.S.C. § 502, Fed. R. Bankr. P. 3007, Local Rule 3007. As such, the allowance of Debtor attorneys' fees against the Respondents is denied. The Debtor's counsel may seek compensation as professional of the estate under 11 U.S.C. §330.

For the reasons stated herein, it is ORDERED, that Respondents' attorneys' fees and expenses are ALLOWED but for the fees and expenses of Winstead PC and estimated fees for L&B for July 2017.

The Court calculates the Respondents' attorneys' fees and expenses as follows: Respondents' attorneys' fees and expenses of $98,236.76, per proof of claim 6-3, less Winstead PC attorneys' fees of $10,131.12 and expenses of $1,360.37 for a total of $86,745.27.

In addition, per Exhibit A of Respondents' Motion, attorneys' fees of $48,247.20 and expenses of $4,210.03 for June 2017 are allowed for a total of $52,457.23. Further, per Exhibit B of Respondents Motion, attorneys' fees of $2,947.50 and expenses of $614.61 for July 2017 are allowed for a total of $3,562.11. Respondents' claim for attorneys' fees and expenses is allowed

in the total amount of $142,764.61.

All other relief requested is DENIED.

# # #